**Hector ACOSTA, et al., Plaintiffs,**

v.

**Alexander M. HAIG, et al., Defendants.**

**Nos. 80 C 2075, 80 C 3681 and 81 C 1025.**

United States District Court,
N. D. Illinois, E. D.

Dec. 30, 1981.

Amended Dec. 31, 1981.

William Siebert & Associates, Kristine Poplawski, Legal Assistance Foundation, Kalman Resnick, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs.

Gail C. Ginsberg, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

The above consolidated actions, which are based on the Immigration and Nationality Act (the Act), 8 U.S.C. §§ 1101 et seq., are before the court on cross motions for summary judgment. The sole issue before the court is the proper application of § 202(e) of the Act, 8 U.S.C. § 1152(e).[1] The plaintiffs, fifth and sixth preference Mexican visa applicants,[2] contend that § 202(e) should have applied in fiscal year 1980 ("FY 1980") because the defendants allocated more than 20,000 visa numbers to Mexican consular posts. The defendants[3] maintain that because less than 20,000 visas were actually available for issuance to Mexican applicants, § 202(e) was inapplicable. Because the Department of State is afforded great deference as the government agency charged with the Act's administration, and the defendants' interpretation of § 202(e) is reasonable in light of the entire Act, the defendants are entitled to summary judgment as a matter of law, pursuant to Rule 56, F.R.Civ.P.

The visa selection system sets forth the manner in which the Department of State shall distribute visas, 8 U.S.C. §§ 1151–56. The maximum worldwide number of visas that could be issued in FY 1979 was 290,000. These visas were to be distributed according to a multi-category preference system set out in § 1153(a).

Under this system, a specific percentage of the annual worldwide visa maximum is assigned to each preference category. For example, twenty percent of the annual number of visas is assigned to the first preference category. In FY 1979, this meant that 58,000 visas were assigned to this category. Within each worldwide preference category, visa applicants are considered in chronological order by their priority dates, the date on which they established their eligibility for preference visas.[4] If the number of applicants in a given category exceeds the number of visas assigned to that category, a cutoff date is established, and applicants with priority dates that fall after the cutoff date are ineligible for visas.

In addition to the worldwide maximum, the annual number of visas that can be made available to a single foreign country is 20,000, 8 U.S.C. § 1152(a). Within each country's 20,000 limitation, visas are made

1. The relevant portion of § 202(e) states:

"Whenever the maximum number of visas have been made available under this section to natives of any single foreign state ... in any fiscal year, in the next following fiscal year a number of visas, not to exceed 20,000, in the case of a foreign state ..., shall be made available and allocated as follows:" 8 U.S.C. § 1152(e)

As formulated in 1979, the statute then set out seven categories for the preferential allocation of visas, beginning with qualified immigrants who are unmarried sons or daughters of U.S. citizens and descending through other familial and employment categories. The final category was "nonpreference" for all other qualified immigrants.

It should be noted that the above language, quoted from the United States Code, entails a minor discrepancy from the language of the Statutes at Large, which is controlling here. The substantive impact of both, however, is the

same. *See Angco v. Haig,* 514 F.Supp. 1328, 1331 n.6 (E.D.Pa.1981).

2. Fifth preference applicants are qualified immigrants who are the brothers or sisters of U.S. citizens and at least twenty-one years of age. Sixth preference applicants are qualified immigrants with labor skills that are in short supply in the U. S.

3. The Secretary of State is a named defendant since he is charged with the administration of the Act. The other defendants are the U.S. Department of State, which is responsible for the allocation and issuance of visas, the U.S. Immigration and Naturalization Service, and the administrative heads of both agencies.

4. This case only involves visa applicants subject to numerical limitations. Visas not so restricted, such as those granted to spouses of U.S. citizens, have no relevance to this litigation.

available in the order of the preference categories, satisfying the demand in the higher preferences first. As there is no limit per country on the number of visas that may be assigned to any single category, it is theoretically possible for first preference applicants to use a country's entire allocation of 20,000 visas, thereby preventing distribution of any visas to applicants in the lower preference categories.[5]

Section 202(e) was enacted in 1976 to alleviate the sizeable backlogs that had developed in the lower preference categories in several oversubscribed countries. In effect, the section applies the worldwide percentage limitations for each preference category to the distribution of the 20,000 visas within a particular country. These percentage limitations establish numerical ceilings for each preference category within a single country, resulting in the pro-rata distribution of visas among the categories and insuring that a specific share of the country's visas are available to applicants in the lower categories.

The application of § 202(e) has a dramatic impact on the availability of visas for a particular preference category. In Mexico, the number of second preference applicants is very high and the 20,000 available visas would go almost entirely to first and second preference applications if § 202(e) did not apply. When the section applies, however, there is a limit to the number of visas that can go to these categories. In FY 1980, had § 202(e) applied, only 8,000 visas would have been available for distribution to first and second preference applicants. In fact, approximately 19,700 visas went to these applicants in FY 1980.

Whether § 202(e) applies in a particular country turns on the fulfillment of the express condition that in the previous fiscal year "the maximum number of visas ... have been made available ... to natives of any single foreign state." 8 U.S.C. § 1152(e). The controversy in this action centers on the interpretation of what constitutes a visa having been "made available" under the statute. Plaintiffs contend that a visa is "made available" when a visa number is allocated to a visa applicant. They point out that in FY 1979 more than 22,000 visa numbers were allocated for Mexican applicants.[6] From this they reason that the statutory maximum of visas was "made available" to Mexican applicants in FY 1979 and therefore that § 202(e) should have been applied in FY 1980.

There is a serious flaw in plaintiffs' argument. In FY 1978, defendants had determined that the statutory maximum of visas had been made available to Mexican applicants and, accordingly, in FY 1979, § 202(e) governed the distribution of visas in Mexico. Pursuant to that section, in FY 1979, 2,000 visas were earmarked for sixth preference applicants and another 1,200 were earmarked for seventh preference applicants. Ordinarily, if there are insufficient applicants within a particular preference category, the unused visas earmarked for that category "drop-down" and are distributed to lower preference categories or to "nonpreference" immigrants. In FY 1979, however, this was not the case.

In FY 1979, the worldwide demand for visas exceeded the 290,000 quota. Due to the large demand for preference visas, there were no "nonpreference" visas available on a worldwide basis. As the distribution of visas within an individual country is always subject to the worldwide quotas, this meant that any unused visas from the sixth and seventh preference categories could not be "dropped-down" and made available to nonpreference applicants.

---

**5.** As noted above, there is a worldwide limit on the number of visas available for each preference category that may prevent a country from allocating all of its 20,000 visas to the higher preference categories.

**6.** The number of visas actually issued to Mexican applicants was much lower, in the vicinity of 17,000, although the exact number is not clear from the record. The allocation of more visa numbers than visas to be issued compensates for those cases where, after receiving a visa number, an applicant fails to satisfy all eligibility requirements. In FY 1979 in Mexico, approximately twenty-three percent of the visa numbers allocated were returned due to such failures. Aff. of Wm. Garner.

Moreover, again due to the size of the worldwide demand for sixth preference visas, only sixth preference applicants whose priority dates came before the worldwide cutoff date were eligible for visas. In Mexico in FY 1979, there was an insufficient number of eligible sixth preference applicants, i.e., those with priority dates preceding the worldwide cutoff date. As a result, it was impossible to distribute the full 2,000 sixth preference visas to sixth preference applicants.

There was also an insufficient number of eligible seventh preference applicants.[7] Therefore, because on a worldwide basis nonpreference applicants were ineligible for visas, it was impossible to distribute all of the visas allocated to the sixth and seventh preference categories. Thus, 20,000 visas could not be distributed in FY 1979.

In a case very similar to the present one, *Angco v. Haig*, 514 F.Supp. 1328 (E.D.Pa. 1981), the district court for the Eastern District of Pennsylvania in a well-reasoned opinion held that defendants' refusal to apply § 202(e) in FY 1980 was proper. In *Angco*, third and sixth preference applicants from the Philippines challenged defendants' failure to apply § 202(e) to their country in FY 1980. As is the case with Mexico, the demand for visas in the Philippines continually exceeds the 20,000 limitation. The *Angco* plaintiffs argued that § 202(e) should apply whenever the demand exceeds the number of available visas. The court rejected this argument, finding that in FY 1979, the actual number of visas that could be made available to Filipino natives was less than the statutory maximum, for reasons nearly identical to those in the instant case. *See Angco*, 514 F.Supp. at 1332

n.10. The court concluded that, due to the shortage of eligible applicants, the statutory maximum had not been "made available," even though the demand for visas exceeded 20,000.[8]

Apparently in an attempt to circumvent the decision in *Angco*, plaintiffs here argue that § 202(e) is triggered whenever more than 20,000 visa numbers are allocated to a single foreign country. Despite the lack of 20,000 eligible Mexican applicants in FY 1979, over 22,000 visa numbers were allocated to Mexico that year.[9] By the express terms of the statute, however, the triggering factor is the number of visas "made available." Where the maximum number cannot be made available for distribution, due to the lack of eligible applicants, the amount of visa numbers allocated is irrelevant, just as the actual demand for visas was found irrelevant in *Angco v. Haig*, 514 F.Supp. 1328 (E.D.Pa.1981). No matter how many visa numbers were allocated for Mexican applicants in FY 1979, defendants could not make the full 20,000 visas available for distribution that year. As the maximum number of visas was not available, the prerequisite to § 202(e) was not met and *that section was inapplicable in FY 1980.*

In summary, the court concludes that in the circumstances of this case, where worldwide demand in FY 1979 prevented the entire number of visas reserved for specific categories under § 202(e) from being distributed, thereby guaranteeing that the full 20,000 visas was not available for distribution to Mexican applicants, defendants' determination that § 202(e) did not govern visa distribution in the following fiscal year was consistent with the statutory mandate. Therefore, summary judgment in defend-

---

**7.** The 1980 amendments to the Act eliminated this preference category.

[?]n *Angco*, the court refrained from explicitly [...] what constitutes a visa being "made [...] The court merely stated that "in [...] ~ly 17,874 visas were made [...] atives." This figure cor- [...] ber of visas issued to Fili-

[...] fendants have argued that [...] able" should be construed to

mean visas "issued," which they in turn define as including visas issued by consular posts and visas considered as issued to an alien whose status is adjusted pursuant to § 245 of the Act, 8 U.S.C. § 1255. Under the facts of this case, where the statutory maximum of visas could not be distributed, it is unnecessary for the court to adopt defendants' definition, and it declines to do so.

**9.** As previously explained, more visa numbers are allocated than visas are actually issued.

ants' favor is appropriate. Accordingly, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted. This disposes of the entire litigation in these consolidated cases.